**MORRISTOWN BLOCK AND CONCRETE PRODUCTS COMPANY**

v.

**GENERAL SHALE PRODUCTS CORPORATION.**

No. Civ-2-85-378.

United States District Court,
E.D. Tennessee,
Northeastern Division.

Sept. 30, 1986.

Donald F. Paine, Dwight E. Tarwater, T. Harold Pinkley, Knoxville, Tenn., for plaintiff.

David C. Evans, John F. Dienelt, Lee A. Rau, Washington, D.C., William C. Bovender, Kingsport, Tenn., Thomas L. Allen, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDERS

HULL, Chief Judge.

This is an antitrust action in which plaintiff, Morristown Block and Concrete Products Company (Morristown Block), seeks damages for defendant's, General Shale Products Corporation (General Shale's), alleged violations of the Robinson-Patman Act (15 U.S.C. § 13(a)); the Sherman Act (15 U.S.C. § 2); and state antitrust provisions (T.C.A. § 47–25–109). Defendant has moved for summary judgment.[1]

Both parties agree that in order for plaintiff to succeed in its claims, it must prove that General Shale "engaged in anti-competitive conduct with the specific intent to monopolize and that the attempt had a dangerous probability of success." *D.E. Rogers Associates, Inc. v. Gardner-Denver Co.*, 718 F.2d 1431, 1435 (6th Cir.1983). In this case, plaintiff asserts that defendant engaged in anticompetitive conduct when it reduced its price for concrete blocks only in Hamblen County, plaintiff's home territory. Plaintiff contends that defendant's price cuts were initiated to drive Morristown Block, its main competitor in Hamblen County, out of business. While General Shale admits that it reduced its prices in Hamblen County, it denies that it did so to drive out competition. On the contrary, General Shale asserts that it reduced its prices in an effort to remain competitive with Morristown Block, which had taken many of General Shale's Hamblen County customers by charging less for its blocks.

Of course, as the Sixth Circuit has pointed out:

> It is not anticompetitive for a company to reduce prices to meet lower prices already being charged by competitors. Indeed, to force a company to maintain non-competitive prices would be to turn the antitrust laws on their head.

*Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 826 (6th Cir. 1982). (Citations omitted). The key issue in determining whether General Shale was competing lawfully or was attempting to oust competition and monopolize the industry is General Shale's intent. Obviously, plaintiffs in antitrust cases will rarely be privy to manifest expressions of illegal intent. Therefore, plaintiffs generally must rely on inferences and circumstantial evidence to demonstrate "predatory pricing" (i.e. cutting prices in order to drive out small competitors with the hope of recouping present losses once the monopoly is established).

While intent may be inferred from many factors, the Sixth Circuit has established a cost-based standard for evaluating claims of predatory pricing. Adapted from the Ninth Circuit's holding in *William Inglis v. ITT Continental Baking Co.*, 668 F.2d

---

1. Since both parties agree that Counts III, IV, VI, and VII of the original complaint should be dismissed, the Court will confine its consideration only to those claims asserted in Counts I (Robinson-Patman § 2a), II (Sherman Act § 2), and III (T.C.A. § 47–25–109).

1014, 1035–36 (9th Cir.1981), this standard is as follows:

> [W]e hold that to establish predator pricing a plaintiff must prove that the anticipated benefits of defendant's price depended on its tendency to discipline or eliminate competition and thereby enhance the firm's long-term ability to reap the benefits of monopoly power. If the defendant's prices were below average total cost but above average variable cost, the plaintiff bears the burden of showing defendant's pricing was predatory. If, however, the plaintiff proves that the defendant's prices were below average variable cost, the plaintiff has established a *prima facie* case of predatory pricing and the burden shifts to the defendant to prove that the prices were justified without regard to any anticipated destructive effect they might have on competitors.

*D.E. Rogers, supra.*, at 1436.

In its motion for summary judgment, General Shale asserts that its internal cost data unequivocally show that its Hamblen County prices have been well above average *variable* costs. (Affidavit of James L. Perkins). Apparently, plaintiff concedes that defendant's prices are above variable costs. Nevertheless, plaintiff attaches the affidavit of John Winston Mayo, a professor of economics at the University of Tennessee, whose calculations indicate that General Shale's blocks have been priced below average *total* costs of production in Hamblen County.

■ Accepting the validity of Professor Mayo's calculations, as we must in assessing summary judgment motions, the plaintiff has demonstrated that defendant's prices were below average total cost but above average variable costs. Therefore, applying the cost-based standard enunciated in *D.E. Rogers*, the Court finds that plaintiff has failed to establish a *prima facie* case of predatory pricing.

This, of course, does not dispose of the case, since plaintiff has introduced evidence of pricing below total cost; but plaintiff retains the burden of establishing General Shale's predatory intent. In order to meet this burden, plaintiff asserts the following: (1) Predatory pricing makes economic sense for General Shale. General Shale has a broader base of operations and greater financial resources than plaintiff. Therefore, defendant has the means to survive a long seige of below-cost pricing. Furthermore, plaintiff argues, General Shale could easily recoup its losses after Morristown Block's demise, since capital requirements, together with difficulties in locating a cinder source would thwart new competitors in Hamblen County. In the meantime, General Shale would raise its prices and reap profits before new competitors could enter the field. (2) General Shale only cut prices in Hamblen County and only after Morristown Block refused to follow General Shale's price increase in Greene County. (3) General Shale priced its previous Hamblen County competitors out of business and enjoyed a virtual monopoly until Morristown Block began business. (4) Morristown Block's gross sales have decreased in Hamblen County since defendant instituted price cuts.

In assessing these arguments for ascribing illegal intent to General Shale's price cuts, the Court is mindful of the Supreme Court's recent comments on upholding summary judgment in another predatory price case:

> [A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. Thus in *Monsanto Co. v. Spray-Rite Service Corp.* 465 U.S. 752, 79 L.Ed.2d 775, 104 S.Ct. 1464 (1984), we held that conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, ——, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538, 553.

■ After careful consideration of plaintiff's evidence of General Shale's intent and of the record as a whole, the Court finds that plaintiff has failed to present anything more than ambiguous evidence and speculation as to General Shale's intent in cutting prices in Hamblen County. General

Shale's conduct is just as consistent with an effort to promote competition as it is with an attempt to stifle it; and standing alone, evidence of such conduct does not support an inference of antitrust activity.

For example, plaintiff finds significant that defendant only reduced its prices in Hamblen County. However, the evidence indicates that General Shale's Hamblen County sales had dropped from over one million units to less than 200,000 units and that General Shale had learned from its customers that the decreased sales were due to the low prices of Morristown Block. As stated in *Richter Concrete, supra,* 691 F.2d at 826, a company may reduce prices to meet those of its competitors without running afoul of the antitrust laws. In fact, the antitrust laws are designed to promote just such competition.

Furthermore, as pointed out in *D.E. Rogers, supra.,* "[I]t is simply good business practice, not a use of monopoly power, to lower prices only where the competition is stiff. '[Desire] to win the competitive struggle ... without more, is not unlawful.'" 718 F.2d at 1435, *quoting Borden v. FTC,* 674 F.2d 498, 519 (6th Cir.1982) and *Northeastern Telephone Co. v. American Telephone & Telegraph Co.,* 651 F.2d 76 (2d Cir.1981). Similarly, plaintiff's reduced sales in Hamblen County seem a natural consequence of General Shale's more competitive prices; and plaintiff's allegations that defendant deliberately extinguished its previous competitor, Quality Concrete, are merely speculative.

Plaintiff's remaining argument, that it makes good economic sense for General Shale to drive Morristown Block out of business, is more probative. Clearly, the Supreme Court found the "economic sense" issue important in *Matsushita supra.:* "If the factual context renders respondents' claims implausible, i.e., claims that make no economic sense, respondents must offer more persuasive evidence to support their claims than would otherwise be necessary." 475 U.S. at ——, 106 S.Ct. at 1350, 89 L.Ed.2d at 545. Nevertheless, plaintiff's claim that defendant is financially sounder than Morristown Block does not, by itself,

support an inference of illegal intent. Simply because General Shale could outlast Morristown Block in the event of a price war does not mean that predatory pricing makes economic sense in this case.

■ As defendant points out, even if General Shale could survive a price war and even if it forced Morristown Block out of business in Hamblen County, General Shale would not be assured of a monopoly. Neither would it be assured of recouping its losses. Other block companies, already selling in adjacent counties and already possessing the necessary capital and ready cinder supplies, would almost certainly enter Hamblen County if General Shale attempted to raise its prices to anticompetitive levels. As the Court points out in *Matsushita:*

> [P]redatory pricing schemes require conspirators to suffer losses in order eventually to realize their illegal gains; moreover, the gains depend on a host of uncertainties, making such schemes more likely to fail than to succeed. These economic realities tend to make predatory pricing conspiracies self-deterring: unlike most other conduct that violates the antitrust laws, failed predatory pricing schemes are costly to the conspirators.

475 U.S. at ——, 106 S.Ct. at 1360, 89 L.Ed.2d at 557. For these reasons and on the evidence before the Court, the Court finds that it does not make economic sense in this case for General Shale to engage in predatory pricing.

In supporting a vigorous standard of summary judgment in predatory prices cases, the *Matsushita* Court noted: "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." 475 U.S. at ——, 106 S.Ct. at 1356, 89 L.Ed.2d at 552. In this case, defendant carried its burden by demonstrating that it cut prices to meet the competitive levels of Morristown Block and that its prices were above variable costs. On the other hand, plaintiff has merely presented speculations and possibilities to infer predatory intent.

Therefore, the Court finds that summary judgment is appropriate in this case.

Accordingly, for all the reasons stated herein, defendant's motion for summary judgment is GRANTED; and it is hereby ORDERED that this action be DIS-MISSED.